UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-60273-HUCK

UNITED STATES OF AMERICA

vs.

BRANDON JEROME SNIDER,

Defendant.

_____/

## FACTUAL PROFFER

The United States of America and BRANDON JEROME SNIDER (hereinafter, "Defendant") hereby stipulate and agree that, were this case to proceed to trial, the United States would prove beyond a reasonable doubt the following facts, among others, which occurred in Broward County, in the Southern District of Florida, and elsewhere, at all times material to the Indictment:

### Background

1.      Bank of America, N.A. ("Bank of America") was a financial institution whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").

2.      Unemployment Insurance ("UI") was a joint state and federal program that provided monetary benefits to eligible beneficiaries.  UI benefits were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own.

3.      Beginning in or around March 2020, in response to the COVID-19 pandemic, the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020 created several federal programs, including the Pandemic Unemployment Assistance Program, Federal Pandemic Unemployment Compensation, and the Lost Wages Assistance Program, which expanded UI

1

eligibility and increased UI benefits to individuals who were unemployed because of the COVID-19 pandemic ("Pandemic UI Benefits").

4.      The California Employment Development Department ("CA-EDD") was an agency of the State of California that administered UI benefits for residents of California, including Pandemic UI Benefits.  Persons applying for UI benefits in California, including Pandemic UI Benefits, were required to reside in the State of California and submit to CA-EDD an application for the benefits. Applications for Pandemic UI Benefits were submitted online.

5.      A claimant for Pandemic UI Benefits was required to answer various questions on the claimant's application to establish the claimant's eligibility for the benefits.  Among other things, the claimant was required to provide personally identifiable information ("PII"), including the claimant's name, date of birth, and social security number, and certify to CA-EDD under penalty of perjury that the COVID-19 pandemic had directly and adversely affected the claimant's employment.  Claimants applying for Pandemic UI Benefits did not need to submit any supporting documents to CA-EDD with their applications.  Individuals who were employed, retired, or incarcerated were not eligible for UI benefits, including Pandemic UI Benefits.  The CA-EDD relied upon the information in the application to determine the claimant's eligibility for benefits.

6.      Additionally, to successfully file a claim for Pandemic UI Benefits with CA-EDD, the claimant had to pass an identity verification provided by ID.me, Inc. ("ID.me"), a third-party online identity verification service.  The ID.me. identity verification process required the claimant to provide the claimant's PII, a government-issued form of identification, and a selfie photograph taken in real-time.  During the ID.me identity verification process, a text message was sent to the phone number provided by the applicant that contained a link that allowed the claimant to provide the required photograph of the claimant's government-issued form of identification and take a real-time selfie

photograph. ID.me's facial recognition software was then used to compare the applicant's real-time selfie photograph with the photograph on the claimant's government-issued form of identification.

7. If CA-EDD approved an application and granted Pandemic UI Benefits to the claimant, Bank of America created a prepaid debit account in the claimant's name ("BOA Debit Account") into which CA-EDD deposited the claimant's Pandemic UI Benefits. The Pandemic UI Benefits deposited in the BOA Debit Account were moneys and funds under the custody and control of Bank of America.

8. To access the Pandemic UI Benefits that were deposited in the BOA Debit Account, Bank of America issued a debit card ("BOA Debit Card") in the name of the claimant that was linked to the claimant's BOA Debit Account containing the money and funds from the Pandemic UI Benefits. Bank of America mailed the BOA Debit Card to an address provided by the claimant and could be activated by telephone or online. Once activated, the BOA Debit Card could be used to withdraw Pandemic UI Benefits from the BOA Debit Account in the form of cash dispensed from automated teller machines ("ATMs"), including ATMs that Bank of America operated. The BOA Debit Cards could also be used to make purchases by debiting the claimant's Pandemic UI Benefits from the BOA Debit Account in point-of-sale transactions.

9. Visa Debt Processing Solutions ("Visa DPS") was a vendor contracted by Bank of America to process all transactions on UI prepaid debit cards, including those issued by the CA-EDD. Visa DPS had two platform processor data centers that housed all of the UI prepaid card data for Bank of America. Those data centers were located in Ashburn, Virginia and Highlands Ranch, Colorado. Any transaction made on a Bank of America UI prepaid debit card, including loading of funds, point-of-sale transactions, and ATM withdrawals, passed through one of those two data processor centers.

3

## The Conspiracy

10.     From in and around September 2020, and continuing through in or around May 2022, Defendant agreed with co-defendants Lindsley Chambers Jr., Robert McKinley Thomas, Justin Anthony Seivright, Tacaveon Travon Carson, Phillip Michael Valcin Jr., Patrick Marquis Ayton Jr., and others, to accomplish a common and unlawful plan to commit bank fraud and wire fraud.  The purpose of the unlawful plan was for Defendant and his co-conspirators to enrich themselves by fraudulently obtaining UI benefits, including Pandemic UI Benefits, from CA-EDD that were under the custody and control of financial institutions, including Bank of America. Defendant knew the unlawful purpose of the plan and willfully joined in it.

11.     Defendant and his co-conspirators carried out the conspiracy in multiple steps, including, but not limited to, the following:

> a.     One or more co-conspirators obtained without lawful authority PII of victims of identity theft ("Identity Theft Victims"), including names, dates of birth, and social security numbers.

> b.     One or more co-conspirators created counterfeit driver licenses and other fictitious forms of identification (collectively, "Counterfeit IDs") by combining unlawfully obtained PII of Identity Theft Victims and photographs of co-conspirators, including co-defendants Chambers and Thomas.

> c.     One or more co-conspirators submitted and caused the submission of false and fraudulent applications to CA-EDD for Pandemic UI Benefits using the unlawfully obtained PII and Counterfeit IDs.  These applications were

4

submitted online and caused information to be transmitted by wire in interstate commerce.

d.  When prompted to verify the identity of the purported applicant through ID.me, Chambers and one or more co-conspirators submitted for comparison a real-time selfie photograph of Chambers' face and a photograph of a Counterfeit ID bearing a picture of Chambers's face and PII of the purported applicant (i.e., an Identity Theft Victim).

e.  Defendant and his co-conspirators possessed and used BOA Debit Cards issued in the names of Identity Theft Victims to fraudulently access and receive Pandemic UI Benefits, in the form of money and funds under the custody and control of Bank of America, by making cash withdrawals at ATMs and debit purchase.

12.  In total during the conspiracy, the co-conspirators submitted and caused the submission of false and fraudulent applications to CA-EDD for Pandemic UI Benefits on behalf of at least 146 unique Identity Theft Victims.  As a result of these false and fraudulent applications, the co-conspirators caused CA-EDD to pay Pandemic UI Benefits in the approximate amount of $2,095,831, which CA-EDD disbursed to BOA Debit Accounts under the custody and control of Bank of America.  Of this amount, Defendant and his co-conspirators unlawfully withdrew in cash, and otherwise unlawfully received, approximately $1,670,954 of fraudulent Pandemic UI Benefits.

**Defendant's Role in the Conspiracy**

13.  Defendant's role in the conspiracy included, among other things, making cash withdrawals of fraudulently obtained Pandemic UI Benefits at Bank of America ATMs in Broward County using BOA Debit Cards issued in the names of Identity Theft Victims.  ATM surveillance

photographs show that, in January 2021, Defendant made at least 3 withdrawals of fraudulently obtained Pandemic UI Benefits at Bank of America ATMs in Broward County using BOA Debit Cards issued to an Identity Theft Victim. Additionally, in January 2021, February 2021, and May 2021, Defendant transferred fraudulently obtained Pandemic UI Benefits held in BOA Debit Accounts in the names of 4 unique Identity Theft Victims to checking accounts in Defendant's name. Defendant also used, and caused to be used, fraudulently obtained Pandemic UI Benefits on a BOA Debit Card issued in the name of an Identity Theft Victim to purchase airline tickets for himself and others.

14.     In particular, on January 17, 2021, at approximately 4:27 p.m., during and in relation to a felony violation of Title 18, United States Code, Section 1344 (bank fraud), Defendant knowingly possessed and used without lawful authority the means of identification of another person. That is, Defendant possessed and used the BOA Visa Debit Card ending number 0540 of S.E., an Identity Theft Victim, to withdraw $1,000 of fraudulently obtained Pandemic UI Benefits from a Bank of America ATM located in Tamarac, Florida. S.E. did not file any application for any UI benefits with CA-EDD, did not give anyone permission to file for UI benefits with CA-EDD, did not provide or authorize his PII to be possessed or used by Defendant for any purpose, and did not know Defendant or anyone else used S.E.'s identity to file for UI benefits and withdraw fraudulent UI benefits.

15.     As a result of Defendant's own conduct in the conspiracy, and the conduct of his co-conspirators reasonably foreseeable to him, Defendant is responsible for causing an intended loss greater than $1,500,000 and less than $3,500,000.

16.     The United States and Defendant agree that these facts, which do not include all facts known to the United States and Defendant, are sufficient to prove beyond a reasonable doubt the elements of conspiracy to commit bank fraud and wire fraud, in violation of Title 18, United States Code, Section 1349, as charged in Count 1, and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A, as charged in Count 23, and that Defendant is in fact guilty of those offenses.

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: 3/19/26          By: _____
                            DAVID A. SNIDER
                            ASSISTANT UNITED STATES ATTORNEY

Date: 3-19-26               _____
                            JAMES S. LEWIS, JR.
                            ATTORNEY FOR DEFENDANT

Date: 3/19/26               _____
                            BRANDON JEROME SNIDER
                            DEFENDANT

7